JOURNAL ENTRY and OPINION
{¶ 1} Defendant-appellant Peter Mayes appeals from his convictions and the subsequent sentences imposed for two counts of attempted forcible rape, one count of forcible rape, and one count of gross sexual imposition. Appellant further challenges the trial court's classification of him as a sexual predator.
 {¶ 2} In his five assignments of error presented by and through counsel, appellant makes the following assertions: his convictions for attempted rape and gross sexual imposition were based upon insufficient evidence; the trial court improperly denied his motion for a mistrial after the jury heard testimony concerning his prior conviction for robbery; the trial court's imposition of consecutive sentences upon him is unsupported in the record; the total sentence imposed by the trial court is inconsistent with sentences imposed on other offenders; and, the determination he is a sexual predator lacks adequate evidentiary support.
 {¶ 3} Appellant also has submitted an appellate brief pro se in which he further asserts trial counsel rendered constitutionally ineffective assistance.
 {¶ 4} Following a thorough review of the record, this court disagrees with all of appellant's assertions. Consequently, his convictions and sentences, together with the trial court's classification of him as a sexual predator, are affirmed.
 {¶ 5} Appellant's convictions result from his original relationship with the victim's mother "MJ,"[1] a registered nurse. Appellant, who was forty-four years old at the time, had become acquainted with MJ in late 1999, just after her separation from her husband, AW, the father of her two children,[2] a boy aged fifteen and a girl, R, aged thirteen.[3]
 {¶ 6} Three months after AW left the household, appellant moved in and began an intimate relationship with MJ. For nearly a year thereafter, appellant was one of MJ's children's male authority figures. Appellant shared an interest in small animals with R; both of them kept as pets a number of hamsters and gerbils.
 {¶ 7} By July 2001, MJ had broken off her increasingly stormy relationship with appellant, become involved with another man, and moved with her children to his home in Wadsworth, Ohio. She and appellant, however, shared mutual friends. Consequently, after her move, MJ made some effort to be amicable toward appellant.
 {¶ 8} Appellant appeared to reciprocate her effort. In late 2001, knowing MJ was unemployed, he offered her a job painting with him for a few days. He also invited MJ to see his new apartment in Rocky River, Ohio.
 {¶ 9} During all this time, MJ also cooperated with AW in giving him visitation with the children. MJ eventually obtained a nursing position in Wadsworth. Subsequently, she and AW arranged for him to take the children to his home in North Olmsted, Ohio on alternate weekends. These generally were the weekends MJ was scheduled for work.
 {¶ 10} Through appellant's occasional contact with MJ, he became aware of this arrangement. He telephoned MJ in February 2002 and expressed a wish to continue his relationship with her children. Appellant suggested he could do so partially by acting as a "facilitator" of MJ's visitation arrangement for the children with AW. He had time, transportation, and an apartment located near AW's place of employment.
 {¶ 11} MJ cautioned appellant that the schedule was flexible. When she mentioned that sometimes her son decided at the last minute to remain home, appellant indicated he would not take the decision personally, since he had become especially fond of R due to their shared interest. He persuaded MJ to try the arrangement.
 {¶ 12} Appellant's first weekend as "facilitator" seemed to proceed normally, although, as MJ had predicted, her son decided to stay home rather than to visit AW's house. Appellant went to Wadsworth, picked up only R, and returned to the Cleveland area. Since AW was working that night, R spent it at appellant's apartment. The following morning, appellant transferred R to AW for the remainder of the weekend.
 {¶ 13} The second time appellant acted as "facilitator" occurred on the weekend of March 22, 2002. Since MJ's son had obtained two tickets to a concert for that Friday evening, it was decided that AW would pick the boy up at appellant's apartment, the two of them would go to the event, and the following morning appellant would drive R to AW's house. The arrangement proceeded as planned. AW noticed that R seemed somewhat withdrawn that day and the next, but she did not mention any distress. He returned the children to MJ on Sunday evening.
 {¶ 14} R went to school the next morning as usual. Before school had ended for the day, MJ had been approached by Jeremy Staats, a young man whom R regarded as a "surrogate" older brother. Staats told MJ that R twice had confided in him, and that in view of the information she gave, he could no longer keep the confidence. He indicated that, upon her return home the previous evening, R disclosed appellant had sexually assaulted her for the second time.
 {¶ 15} After questioning Staats, MJ privately confronted R. R at that time told MJ that, both times she had visited appellant's apartment, he had placed his fingers inside her vagina and had unsuccessfully tried to put his penis into her vagina. MJ immediately took R to the hospital.
 {¶ 16} Once there, R described what had occurred first to Donna Abbott, a nurse practitioner. After her physical examination, R described the incidents again to Wendy Facchini, a social worker. R's descriptions to each person were consistent, and she indicated appellant had taken similar actions during each incident.
 {¶ 17} As R described the incidents, appellant waited until she had dropped off to sleep before waking her by removing the garments she wore on her lower extremities. While he pushed aside any of R's attempts to disengage herself, the first time appellant placed her hand on his penis and "made her play with it," then unsuccessfully tried to place his penis into her. The second time, he placed some of his fingers into her vagina and moved them around, as if to stretch its area; he then applied some type of lubricating ointment or oil to her before attempting, but again failing, to penetrate her vagina with his penis. Both times, he replaced her clothing, and "cried" while he "begged" her not to tell anyone what he had done and "promised" he would not do it again.
 {¶ 18} Facchini notified the Rocky River police department. That same night, two officers drove to Wadsworth to obtain items from the backpack R had used as an overnight bag. MJ noticed R's diary was missing even as she handed over the underclothing R had brought home. R had told both MJ and Staats that on March 22, she had recorded the first incident in her diary upon her arrival at appellant's apartment, but that she could not find the diary before she left appellant's apartment on March 23.
 {¶ 19} Appellant subsequently was indicted on six counts. The first three related to the March incident, charging him with: (1) attempted rape, R.C. 2923.02/2907.02(A)(2); (2) rape, R.C.2907.02(A)(2); and, (3) kidnapping, R.C. 2905.01. The remaining three related to the February incident, charging appellant in count 4 with attempted rape; count 5 with gross sexual imposition, R.C. 2907.05; and count 6 with kidnapping. Appellant's case eventually proceeded to a jury trial.
 {¶ 20} After the state presented its evidence, the trial court granted appellant's motion for dismissal as to count 6. Ultimately, the jury acquitted appellant of the remaining kidnapping count, but found appellant guilty of two counts of attempted forcible rape, one count of forcible rape, and one count of gross sexual imposition.
 {¶ 21} The trial court determined appellant to be a sexual predator before sentencing him to consecutive terms of incarceration that totaled twenty-four years.
 {¶ 22} Appellant presents five assignments of error by and through counsel, and presents an additional assignment of error pro se. Appellant's first assignment of error states:
 {¶ 23} "I. Evidence presented was insufficient to support the attempted rape and gross sexual imposition convictions."
 {¶ 24} With regard to his convictions that related to the first incident, appellant argues the state failed to present sufficient evidence to establish the date the offenses occurred. Appellant contends on this basis his motion for acquittal should have been granted as to these two charges. Appellant is incorrect.
 {¶ 25} The precise date of an offense is neither always a material element of the crime charged nor always essential to the validity of a conviction. State v. Madden (1984),15 Ohio App.3d 130; State v. Gingell (1982), 7 Ohio App.3d 364. A precise date is an essential element only under certain circumstances.
 {¶ 26} In cases of sexual assault upon a minor, the date constitutes an essential element only when: (1) the entire
prosecution focuses on one specific date; (2) the defendant presents an alibi defense for that specific date; but, (3)another incident is mentioned during trial. State v. Kinney
(1987), 35 Ohio App.3d 84, at headnote 2. In the foregoing circumstances, "the absence of specifics truly prejudices the accused's ability fairly to defend himself," and, thus, the state has failed to supply an essential element of the crime. State v.Gingell, supra, at 368.
 {¶ 27} Those circumstances did not exist in this case. R, and the persons close to her, testified that she stayed overnight at appellant's apartment on only two occasions. These occasions were ones in which appellant volunteered to transfer the children from MJ's Wadsworth home to AW. The witnesses testified AW took the children on alternating weekends, the son did not desire to go the first time, and the March 22, 2002 date was fixed by both the concert and R's subsequent disclosures; therefore, the first incident must have occurred approximately two weeks or a month previously.
 {¶ 28} Since appellant presented no alibi defense for either of these incidents, the specific date of the first did not constitute an essential element of the crimes. The trial court, therefore, committed no error in denying appellant's motions for acquittal on these counts. Id.
 {¶ 29} Appellant's second assignment of error states:
 {¶ 30} "II. The trial court erred when it denied appellant's motion for a mistrial after testimony relating to appellant's criminal history."
 {¶ 31} Appellant argues that social worker Facchini's "slip of the tongue" on direct examination compromised his right to a fair trial and thus required the trial court to grant his motion for a mistrial following her testimony.
 {¶ 32} In considering appellant's argument, this court initially notes appellant's motion was untimely; he presented it to the trial court only after Facchini had completed all of her testimony, including cross-examination. This court further notes no secret had been made that appellant had an earlier conviction during his trial; in fact, the witnesses established that R based her decision to conceal the incidents partly upon appellant's tearful declaration to her that he did not want to return "to jail."
 {¶ 33} Moreover, Facchini neither finished stating the specific offense, nor did the offense to which she began to refer relate to the crimes for which appellant had been charged in this case. As Facchini started to answer the prosecutor's question about something MJ had stated to her, the prosecutor interrupted her. Thus, Facchini only got as far as saying appellant "had been in jail for rob —" before the subject was abandoned.
 {¶ 34} Finally, the trial court later instructed the jury concerning the proper use of any evidence of appellant's previous conviction; the jury is presumed to have followed the instructions. State v. Zuern (1987), 32 Ohio St.3d 56, 61.
 {¶ 35} Under all these circumstances, the trial court did not abuse its discretion in denying appellant's motion for a mistrial. State v. Glover (1988), 35 Ohio St.3d 18.
 {¶ 36} Appellant's third and fourth assignments of error state:
 {¶ 37} "III. The trial court erred in ordering consecutive sentences which were not supported by the record.
 {¶ 38} "IV. The trial court erred in imposing sentences which are inconsistent with similar sentences for similar offenders as required in R.C. 2929.11(B)."
 {¶ 39} Although appellant did not receive the maximum terms for his convictions, he argues his sentences should be vacated for the trial court's failure to comply with both R.C. 2929.14(E) and R.C. 2929.11(B). Appellant essentially contends that his total sentence for the crimes he committed was excessive. This court disagrees.
 {¶ 40} R.C. 2929.14(E) sets forth the findings necessary in order to impose any sentences for multiple offenses consecutively. R.C. 2929.11(B) reminds the trial court the sentence should be "consistent with sentences imposed for similar crimes committed by similar offenders." This court concludes the comments by the trial court in this case, when placed in context, adequately met the foregoing requirements.
 {¶ 41} As the transcript of appellant's sentencing hearing demonstrates, the trial court decided to impose the terms consecutively because: (1) they were necessary to protect the public; (2) they were warranted by appellant's conduct; and, (3) the harm caused to the victim was so great as to justify multiple prison terms in order to reflect the seriousness of appellant's conduct in committing all of the offenses.
 {¶ 42} Moreover, the trial court additionally stated its underlying reasons for its decision by describing what it considered the most salient features of the sequence of events. Appellant committed the acts on separate occasions, obtaining care of R for only nefarious purposes. The trial court found R's testimony "compelling" in that "there was deception, there was a breach of trust, [and] there was psychological harm, especially after there was a promise not to do it again."
 {¶ 43} These comments thus demonstrate the trial court fulfilled its R.C. 2929.14(E) obligations. State v. Rodeback,
Cuyahoga App. No. 80151, 2002-Ohio-2739; State v. Bolton,
Cuyahoga App. No. 80263, 2002-Ohio-4571.
 {¶ 44} Appellant further challenges the "proportionality" of his sentences, contending the trial court failed to consider whether the total sentence of twenty-four years was consistent with those imposed for similar crimes committed by similar offenders.
 {¶ 45} R.C. 2929.11(B), however, does not require the trial court to engage in an analysis on the record to determine whether defendants who have committed similar crimes have received similar punishments. Rather, the statute indicates the trial court's comments made at the hearing should reflect the court considered that aspect of the statutory purpose in fashioning the appropriate sentence. State v. Edmonson, 86 Ohio St.3d 324 at 326-327, 1999-Ohio-110. This court's review is limited to a determination of whether the sentence is contrary to law. Statev. Haamid (June 28, 2001), Cuyahoga App. Nos. 78220, and 78221.
 {¶ 46} Appellant directs this court's attention to nothing in the record that supports a conclusion the trial court failed to engage in the analysis. Indeed, the trial court's comments in this case demonstrate it believed appellant's conduct to be particularly egregious. After previously having been convicted of several offenses, including a sexually-oriented one, appellant nevertheless proceeded to use his position as a father-figure to R to victimize her. In spite of the circumstances, the trial court did not impose the maximum terms for appellant's convictions, but ordered most of the terms to be served consecutively.
 {¶ 47} The trial court's total order of sentence in this case, moreover, is proportionate to others reviewed by this court in similar cases; therefore, it will not be disturbed. State v.Hunt, Cuyahoga App. No. 81305, 2003-Ohio-175; State v. Bolton,
supra; State v. Wellman (May 18, 2000), Cuyahoga App. No. 76219; State v. Murphy (July 30, 1998), Cuyahoga App. No. 71775.
 {¶ 48} Appellant's fifth assignment of error states:
 {¶ 49} "V. The evidence was insufficient, as a matter of law, to prove `by clear and convincing evidence' that appellant is `likely to engage in the future in one or more sexually oriented offenses'."
 {¶ 50} Appellant argues the trial court's classification of him as a sexual predator lacks foundation in the evidence presented. He contends the evidence was inadequate to establish the likelihood of his future criminal sexual conduct. Based upon the record, appellant's argument is unpersuasive.
 {¶ 51} R.C. 2950.09(B)(2) provides the factors a trial court is to consider in making a classification determination. Many of the listed factors involve conviction data that may be found in the court's file, but the list is not designed to be exclusive; the court must "consider all relevant factors." State v.Eppinger, 91 Ohio St.3d 158 at 164, 2001-Ohio-247. (Emphasis added.)
 {¶ 52} Neither of the parties in this case elected to present to the court any psychological assessments, thus, the trial court had to rely upon the documentary evidence presented by the state and its observations of appellant's behavioral pattern.
 {¶ 53} The state presented evidence that appellant had a long criminal record that began in the State of Florida when appellant had been in his mid-twenties. By 1983, at the age of twenty-eight, appellant had relocated to Ohio, where he was convicted in Richland County of a theft offense and received probation. Soon thereafter, appellant additionally was indicted in Lorain county on a charge of, inter alia, corruption of a minor. Appellant's victim was fourteen years old.
 {¶ 54} Appellant entered into a plea agreement that reduced that corruption of a minor charge to one of gross sexual imposition; he pleaded guilty to that charge and the others listed in the indictment, and was incarcerated until 1988. In 1992, he resumed his criminal activities; ultimately he returned to prison for five years for his convictions for theft offenses in two Cuyahoga county cases. Appellant remained on parole until 1999. He began his relationship with MJ in late 1999.
 {¶ 55} The trial court found it significant that appellant had numerous previous convictions, especially one for a sexual offense involving a fourteen-year old victim, but apparently he had not participated in any available programs for sexual offenders during his incarcerations.
 {¶ 56} Furthermore, the trial court found "plenty of evidence" of a "demonstrated pattern of abuse" of the victim in the instant case, "no question." It believed the forty-six year old appellant's "pleading" and "crying" constituted a type of cruelty toward the thirteen year-old victim, to whom he was like a father, because "trust was involved." Finally, appellant had used his position of trust, not only once, but twice, to obtain temporary charge over the victim. Both times, he sexually abused her; he proceeded with more determination each time.
 {¶ 57} On this record, the trial court found an escalating pattern of criminal sexual behavior. This court cannot find the trial court's determination of appellant's status to be unsupported by the weight of the evidence. State v. Cook,83 Ohio St.3d 404; 1998-Ohio-291; State v. Malinowski (Sept. 6, 2001), Cuyahoga App. No. 78626; State v. Wellman, supra.
 {¶ 58} Accordingly, appellant's assignments brought by and through appellate counsel are overruled.
 {¶ 59} Appellant's pro se assignment of error, set forth verbatim, states:
 {¶ 60} "Ineffective assistance of counsel regarding trial counsel's procedures; or lack thereof."
 {¶ 61} Appellant argues the attorney he retained for his defense provided inadequate assistance by failing to present defense witnesses to challenge the evidence presented by the state.
 {¶ 62} The claim of ineffective assistance of counsel requires proof that "counsel's performance has fallen below an objective standard of reasonable representation" and, in addition, that prejudice arises from counsel's performance.State v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus; see, also, State v. Lytle (1976),48 Ohio St.2d 391. The establishment of prejudice requires proof "that there exists a reasonable probability that were it not for counsel's errors, the result of the trial would have been different."State v. Bradley, supra, paragraph three of the syllabus.
 {¶ 63} The burden is on defendant to prove ineffectiveness of counsel. State v. Smith (1985), 17 Ohio St.3d 98. Trial counsel is strongly presumed to have rendered adequate assistance. Id., see, also, Vaughn v. Maxwell (1965), 2 Ohio St.2d 299. Moreover, this court will not second-guess what could be considered to be a matter of trial strategy. Id.
 {¶ 64} The record with regard to trial counsel's actions in this case fails to demonstrate counsel's performance fell below an objective standard of reasonableness; in spite of appellant's argument, the decision to call a witness during the course of trial is a matter of trial strategy. State v. Hunt (1984),20 Ohio App.3d 310.
 {¶ 65} Although appellant contends counsel should have presented defense witnesses who would have challenged the credibility of the state's witnesses, his contention is speculative at best. A review of the suggested "evidence" appellant seeks at this juncture to fault counsel for failing to provide indicates it would be inadmissable as either hearsay or collateral to the issue of guilt. It is likely, therefore, counsel decided its presentation would both alienate and unnecessarily tax the patience of the jury.
 {¶ 66} The record demonstrates trial counsel was well-prepared, knowledgeable, and careful in his cross-examination of the various witnesses presented by the state. In the face of overwhelming evidence of appellant's guilt, he chose to portray appellant as a man with tender proclivities who, perhaps because R's mother had lived an unconventional life for the past few years, had been unjustly accused in an attempt by R to obtain some attention. As the court admonished in Statev. Hart (1988), 57 Ohio App.3d 4, effective assistance of counsel does not guarantee favorable results.
 {¶ 67} Since appellant has failed to demonstrate either that his counsel fell below an objective standard of reasonable representation or that he was prejudiced thereby, his pro se assignment of error also is overruled.
 {¶ 68} Appellant's convictions, and sentences are affirmed. The trial court's classification of appellant as a sexual predator also is affirmed.
Timothy E. McMonagle, J., concurs in part and concurs injudgment only in part(with separate concurring opinion)
Anne L. Kilbane, P.J., concurs with the separate concurringopinion of Timothy E. McMonagle, J.
[1] Pursuant to this court's policy, the identity of the victim is shielded; therefore, she and her family members are referred to only by their initials.
[2] During trial, R's parents were compelled to inform her for the first time that AW was not her biological father.
[3] R was born on September 12, 1988.