JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Leland Woods, appeals from the judgment of the Cuyahoga County Common Pleas Court convicting and sentencing him for rape, gross sexual imposition and kidnapping after a jury found him guilty of these offenses. For the reasons that follow, we affirm.
 {¶ 2} The record reveals that an 18-count indictment was returned against appellant charging him with (1) one count of rape, in violation of R.C. 2907.02; (2) eight counts of gross sexual imposition, in violation of R.C. 2907.05; and (3) nine counts of kidnapping, in violation of R.C. 2905.01, which included sexual motivation specifications. Appellant was assigned two different attorneys before the third attorney was retained by his family.
 {¶ 3} At the trial that followed, the victim, whose date of birth is January 14, 1991, testified that appellant is married to her aunt, Andrea Woods, who has had legal custody of the victim since she was two years old. Appellant, Ms. Woods and the victim lived together in the upstairs of a two-story residence, which included a third-floor attic converted for use as the victim's bedroom. Beginning approximately in June 2002, appellant began visiting the victim's bedroom either nightly or every other night. Initially, appellant requested that the victim remove her clothes, at which time he would stare at her naked body. Appellant eventually began touching and licking the victim's breasts, which then progressed to cunnilingus. Appellant's conduct was subsequently discovered when Ms. Woods observed appellant returning from the victim's bedroom and questioned both the victim and appellant. Ms. Woods testified that the victim relayed that appellant had been "bothering her all night." Finding appellant's explanation for being in the victim's bedroom suspect, she confronted appellant, who initially denied the victim's allegations. Eventually, however, appellant stated to Ms. Woods that "he would wake up at three in the morning like clockwork and it would just happen." She further testified that appellant stated that "it all started when [the victim] got in trouble at school and he was going to punish her. So they worked out a deal if [the victim] showed him her body[,] he wouldn't whoop her." Thereafter, appellant "gave her money to see her breasts" and "bought her a bike so he could see her body, either see her body or touch her breasts." Ms. Woods contacted the Cleveland Police Department, who in turn contacted the Cuyahoga County Department of Children and Family Services ("CCDCFS").
 {¶ 4} CCDCFS social worker, Michael Bokmiller, interviewed the victim and made a finding of "substantiated" sexual abuse. Mr. Bokmiller testified that a finding of substantiated sexual abuse is warranted when there is evidence of "actual abuse * * *, whether the evidence comes from medical evidence, a credible witness or an admission from the alleged offender." He based his finding on his interview with the victim, who provided information consistent with her previously discussed testimony, as well as his interview with Ms. Woods. Succinctly, Ms. Woods provided information consistent with her testimony, which Mr. Bokmiller construed as an admission by the offender.
 {¶ 5} Cleveland police officers Norman Saborski and Gerald Mauch confiscated the victim's bed linens and pajamas for DNA testing. Forensic scientist Stacy Shipman testified that the victim's bedspread was a "presumptive positive" for the presence of amylase, an enzyme found in saliva. Testing this sample for genetic markers, forensic scientist Cassandra Agosti found a mixed DNA sample. Ms. Agosti testified that a mixed sample is consistent with the presence of more than one person's DNA and is further broken down into "major" and "minor" profiles. Although the major profile belonged to the victim, appellant could not be excluded as the source of saliva in the minor profile. Moreover, the chance that someone other than appellant was the source of the minor profile was one in 16,330,000.
 {¶ 6} Appellant testified in his own defense. He categorically denied disrobing the victim, staring at her naked body or touching her in any way. He testified that he was first in the victim's bedroom because she had left her television on and that his return trip to her room later that night was because the victim complained of a toothache. Appellant testified that the victim earned the bike by working with him at his cement business "pour[ing] cement." He attempted to discredit Ms. Woods' testimony by testifying to her past drug use and lack of direction in her life.
 {¶ 7} The jury ultimately found appellant guilty of one count of rape, eight counts of gross sexual imposition and one count of kidnapping, including the sexual motivation specification. The remaining eight kidnapping charges were dismissed earlier at the close of the state's case. At the sentencing hearing that followed, the trial court sentenced appellant to life in prison on the rape conviction, to be served consecutive to concurrent two-year terms of imprisonment on each of the gross sexual imposition convictions. The court also sentenced appellant to a three-year term of imprisonment on the kidnapping charge, to be served consecutive to all other sentences. It should be noted that this sentence differs from that which was eventually journalized by the court, which provides that the life sentence for rape and the two-year terms for the gross sexual imposition convictions be served concurrent to each other and consecutive to the three-year term for kidnapping.
 {¶ 8} Appellant is now before this court and assigns a total of eight assignments of error for our review, four of which are through counsel and four of which are pro se. We will discuss them together where appropriate.
 Evidentiary Issues Social Worker's Testimony {¶ 9} In his first assignment of error, appellant contends that CCDCFS social worker Michael Bokmiller gave improper opinion testimony when he "recounted [the] victim's hearsay statements in violation of Evid.R. 803 and the Fifth, Sixth andFourteenth Amendments of the U.S. Constitution." In particular, appellant argues that this social worker did not take part in diagnosing or treating the victim for any physical or psychological condition but merely acted as an "agent" for the Cleveland Police Department.
 {¶ 10} Ordinarily, a trial court has broad discretion in determining the admissibility of evidence, so long as it exercises that discretion "in line with the rules of procedure and evidence." Rigby v. Lake Cty. (1991), 58 Ohio St.3d 269,271. Hearsay is defined as a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Unless a valid exception applies, hearsay is inadmissible. Evid.R. 802.
 {¶ 11} Evid.R. 803(4) excepts from the general hearsay rule "statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." In order for the out-of-court statements to fall within this hearsay exception, however, a social worker's evaluation should be for diagnosis or treatment and not a subterfuge to gather information against the accused.State v. Chappell (1994), 97 Ohio App.3d 515; see, generally,State v. Vaughn (1995), 106 Ohio App.3d 775, 780. TheChappell court explained that this court's previous decisions should "not be interpreted to create a per se rule that all statements made to social workers regardless of their functions qualify under the exception to the hearsay rule in Evid.R. 803(4)." Where a social worker's function "does not include diagnosis or treatment (whether it be mental or physical treatment of a child sex abuse victim), any statement made to the social worker cannot be admissible under the exception to the hearsay rule in Evid.R. 803(4)." Id. at 531. We, therefore, look to the function of the social worker in the instant case to determine whether the victim's statements could be interpreted as being for diagnosis or treatment.
 {¶ 12} Mr. Bokmiller testified that he is an intake social worker with CCDCFS. In this role, he is responsible for investigating allegations of child sexual abuse and making appropriate recommendations for medical intervention and/or other form of intervention. He testified that he coordinated his interview of the victim with Cleveland Police Detective Sherilyn Howard, a detective with the sex crimes unit, who was either present during the interview or observed the interview. After interviewing the victim, Mr. Bokmiller found abuse to be substantiated, recommended the victim be seen at the Alpha Clinic at MetroHealth Medical Center and, at a later point, removed the child from her aunt's home after finding her home environment unsafe.
 {¶ 13} Officer Howard testified that her department "always [has] a social worker that actually conducts our interviews for us while we view the interview." She explained the reasoning behind this procedure:
 {¶ 14} "So we don't have to continue to put the child through the interviewing process and continue to have the child continuously repeat what has happened to them. By the time it gets to me, I need a lot of details. And so the social worker can pull out those details. I don't have to come back behind him and then make the child re-live the whole thing again."
 {¶ 15} However laudable the goal of protecting the child may be, the presence of a police officer not only undermines confidentiality, but detracts from the social worker's stated goal of identifying or "diagnosing" whether the child exhibits signs of sexual abuse that would require treatment. It is true that the social worker identified the need for social services, which included making a referral to the Alpha Clinic and eventually removing the victim from her aunt's home. Arguably, these actions may be consistent with diagnosis or treatment. SeeState v. Krzywkowski, Cuyahoga App. No. 83092, 2002-Ohio-4438, at ¶ 123 (testimony of intake social worker with CCDCFS, whose role was to interview and investigate children suspected of sexual abuse, found to be "pertinent to medical treatment or diagnosis," and thus within the exception to the hearsay rule). When a social worker conducts an interview of a child-victim in a police officer's presence, however, the interview appears as a subterfuge for the gathering of information, rather than for aiding in the diagnosis or treatment of the victim. As such, we conclude that the social worker's testimony in this case does not fall within the hearsay exception set forth in Evid.R. 803(4) and it was error for the trial court to admit it. Chappell,97 Ohio App.3d at 534; see, also, State v. Francis (Jan. 25, 2000), 5th Dist. No. 98CA13, 2000 Ohio App. Lexis 190.
 {¶ 16} We do not find this error prejudicial, however. The victim herself testified consistently as to appellant's behavior and was subject to rigorous cross-examination by appellant's counsel. As in Chappell, the social worker's testimony is not any more damaging than that of the victim at trial.
 {¶ 17} As objectionable as we find the practice of coordinating interviews between CCDCFS and the police department, we find nothing but harmless error when the victim testifies consistently and is subject to cross-examination. Of course, the reverse may be true if the victim's testimony is materially inconsistent or otherwise demonstrates lack of credibility. That not being the case here, appellant's first assignment of error is not well taken and is overruled.
 Andrea Woods' Testimony {¶ 18} In his second assignment of error, appellant contends that the trial court erred in admitting irrelevant and prejudicial testimony regarding the victim's aunt's abortion, her intent to divorce appellant and statements that otherwise bolstered the victim's credibility. Appellant raised no objection to this testimony, however, and has, therefore, waived all but plain error. See, generally, State v. Long (1978),53 Ohio St.2d 91. Plain error is an obvious error or defect in the trial court proceeding that affects a substantial right. Id. at 94. "Plain error does not exist unless it can be said that, but for the error, the outcome of the trial would clearly have been otherwise." State v. Moreland (1990), 50 Ohio St.3d 58, 62.
 {¶ 19} Initially, we note that appellant mischaracterizes Ms. Woods' testimony regarding her "abortion." Ms. Woods, who was pregnant at the time of the offense, testified that she went for her routine check-up sometime after learning of the allegations against appellant. At that time, an ultrasound test indicated that her unborn baby was "dead," so she had a "suction, D C." Generally, an abortion is an intentional termination of a pregnancy as opposed to a medical procedure necessary to evacuate a dead fetus. See Black's Law Dictionary (7 Ed.Rev. 1999) 6.
 {¶ 20} Notwithstanding this mischaracterization, the testimony to which appellant objects does not rise to the level of plain error. The victim consistently testified about appellant's sexual conduct towards her. Thus, the outcome of the trial would not have been different even in the absence of this testimony.
 {¶ 21} Appellant's second assignment of error is not well taken and is overruled.
 Ineffective Assistance of Counsel {¶ 22} In his third assignment of error through counsel and his first two assignments of error pro se, appellant claims his counsel was ineffective when trial counsel (1) failed to disclose DNA evidence to appellant; (2) elicited inadmissible hearsay from a police officer; (3) failed to call witnesses made known to counsel; and (4) failed to adequately challenge the state's expert witness.
 {¶ 23} In order to establish a claim of ineffective assistance of counsel, a criminal defendant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense. Strickland v. Washington
(1984), 466 U.S. 668, paragraph two of the syllabus,104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Bradley (1989),42 Ohio St.3d 136, cert. denied (1990), 497 U.S. 1011, 110 S.Ct. 3258,111 L.Ed.2d 768. Prejudice is demonstrated when the defendant proves that, but for counsel's actions, there is a reasonable probability that the result of the proceedings would have been different. Strickland v. Washington, 466 U.S. at 694.
 {¶ 24} The United States Supreme Court in Strickland ruled that judicial scrutiny of an attorney's work must be highly deferential. The Court noted that it is all too tempting for a defendant to second-guess his lawyer after conviction and that it would be all too easy for a court, examining an unsuccessful defense in hindsight, to conclude that a particular act or omission was deficient. Therefore, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.'"Strickland, 466 U.S. at 689.
 DNA Evidence {¶ 25} At the sentencing hearing, appellant informed the court that his trial counsel did not tell him of the DNA evidence against him. After sentence was imposed, the court questioned appellant's counsel, who vehemently denied this accusation. Appellant's trial counsel stated:
 {¶ 26} "I did show it to him, again, at least two occasions, and he asked me, did the DNA identify him, and I said — I showed him that the conclusion said, Leland Woods cannot be excluded as a minor source of the DNA. And I said, that what it says. But I said, there is going to be DNA in this trial. And I said * * * the difficulty with DNA, Mr. Woods, is we have no objective technical evidence to dispute it. And I said, there certainly is DNA here, you're involved with DNA. And he said, well, doesn't say I did it.
 {¶ 27} "I said, no, it doesn't say you did it, but there's one chance in sixteen million. I said, we have a problem with that."
 {¶ 28} Appellant contends that his trial counsel's statements to the court are not only untrue, but reveal confidential communications. He argues that the trial court should have appointed new counsel at this point, conducted an evidentiary hearing and granted a new trial.
 {¶ 29} It was appellant who stated to the court that his trial counsel failed to supply him with the DNA report or discuss the results of the testing with him, despite earlier stating to the court that he and his counsel discussed the DNA testing. Before sentence was imposed, however, appellant stated to the court:
 {¶ 30} "Next thing I know, we come into — [trial counsel] gets a piece of paper from when they took the exam, as far what was supposed to have been in the pajamas, the sheets and everything.
 {¶ 31} "I asked, well, did it state anything in there? He told me at that time, no. It was nothing, no DNA or nothing in none of that."
 {¶ 32} When the court inquired of appellant's trial counsel after sentence was imposed, appellant interrupted the court, stating "[d]idn't show — didn't show — say nothing," which contradicts his earlier statements to the court. Appellant's trial counsel defended the allegation against him. The trial court, apparently satisfied that appellant's trial counsel provided the report in question, advised appellant of his appeal rights and the sentencing hearing concluded.
 {¶ 33} Appellant provides this court with no authority that the trial court erred in questioning his trial counsel in the manner in which it did or that his trial counsel's conduct before the court in answering the court's inquiry constitutes ineffective assistance of counsel. Although appellant may have other remedies available to him to address any perceived shortcomings of his counsel, there is nothing in the record before this court at this time that would even arguably support an ineffectiveness claim on this issue.
 Hearsay Testimony {¶ 34} Appellant next contends that his trial counsel was ineffective for eliciting hearsay testimony from a police officer concerning the statements made to the officer by the victim.
 {¶ 35} Police officer Gerald Mauch testified that he and his partner retrieved the victim's bedclothes and bed linens and then interviewed the victim. On cross-examination, appellant's trial counsel asked the officer what the victim stated to him, at which time he testified as follows:
 {¶ 36} "[The victim] stated that a couple months prior, that the alleged suspect confronted her and then over the course of a couple of months, every other, approximately every other night, was coming into her bedroom at night and making her take her clothes off, performed oral sex on her, touched her body."
 {¶ 37} Even if this testimony is inadmissible hearsay, we cannot say that appellant suffered any prejudice. Excluding Officer Mauch's testimony from consideration, there is no reasonable probability that the outcome of trial would have been different. The victim's own testimony regarding the appellant's conduct could support the jury's verdict without the independent corroboration of Officer Mauch. Consequently, appellant's ineffective assistance of counsel claim is unsupportable.
 Other Defense Witness {¶ 38} In his first pro se assignment of error, appellant contends that his trial counsel failed to call the stepmother of Ms. Wood as a defense witness after stating to the court that her testimony would be relevant and probative.
 {¶ 39} It appears from the record that this witness was 90 years old and had difficulty appearing in court. Counsel stated to the court that he would withdraw his request for her testimony if she did not appear, which she did not. Appellant claims that this witness's testimony would have altered the outcome of trial. Although this may be an appropriate argument for other relief not related to this appeal, there is nothing from the record from which we could glean that the testimony of this non-appearing witness would have changed the outcome of trial and appellant has provided us with none.
 Forensic Evidence {¶ 40} In his second pro see assignment of error, appellant contends that his trial counsel was ineffective for failing to adequately challenge the state's forensic witnesses. In particular, appellant argues that his counsel should have (1) explored whether the presence of amylase on the victim's pajama bottoms could have been the result of a non-sexual encounter; and (2) challenged the statistical data.
 Presence of Amylase {¶ 41} Reiterating Ms. Shipman's testimony, of the several items confiscated for DNA testing, only the victim's bedspread was found to be a "presumptive positive" for the presence of amylase, a component of saliva, and appellant could not be excluded as the source of the minor profile. As such, appellant's claim that his trial counsel was ineffective for failing to rebut the presence of amylase on the victim's pajama bottom must fail as there was no "presumptive positive" for the presence of amylase on the pajama bottoms. To be sure, Ms. Shipman testified that amylase was found on the pajama bottom, particularly in the crotch area of the pajama bottom, but it did not rise to the level of "presumptive positive" so as to be conclusive enough to warrant further testing for genetic markers. Trial counsel, therefore, cannot be said to be ineffective for failing to rebut testimony that bore no significance.
 {¶ 42} Construing appellant's argument as one challenging the presence of amylase on the victim's bedspread, it must be remembered that Ms. Shipman testified to the presumptive positive presence of a amylase on the bedspread, not the manner in which it was deposited there. Even if trial counsel would have inquired as appellant suggests, this witness was limited to describing what she observed and learned from her testing of the bedspread and nothing more.
 (2) Statistical Data {¶ 43} Repeating Ms. Agosti's testimony, appellant could not be excluded as the source of the minor profile and there was a one in 16,330,000 chance that someone other than appellant was the source of this profile.
 {¶ 44} Appellant claims that his trial counsel should have "secur[ed] additional studies" attacking the quality of the data collected and the design of the study. As discussed in Section V, DNA testing enjoys wide acceptance as scientific evidence. See, generally, State v. Pierce (1992), 64 Ohio St.3d 490. Although admissible, however, its reliability is subject to the same credibility determinations as any other scientific evidence. Id.
 {¶ 45} Appellant does not challenge its admissibility under this assignment of error; he argues only that his trial counsel failed to explore the potential possibility that it may not have been reliable. He offers no argument as to how this evidence was or may have been unreliable. From the record before us, we find no support for appellant's argument that his trial counsel was ineffective for failing to challenge the reliability of this evidence. Even if he could have successfully challenged this evidence, we cannot say that the outcome of trial would have been different in the absence of this testimony.
 Sentencing Issues {¶ 46} In his fourth assignment of error, appellant contends that his sentence is contrary to law because the trial court failed to insure that the sentence imposed was consistent with the sentences imposed upon similarly situated offenders.
 {¶ 47} "The requirement of consistency addresses the concept of proportionality by directing the court to consider sentences imposed upon different offenders in the same case or on offenders in other similar cases. The consistency concept gives legal relevance to the sentences of other judges. It adopts the premise that an overwhelming majority of judges sentence similarly, that a relatively small minority sentence outside of the mainstream, and that sentences outside of the mainstream of judicial practice are inappropriate." Griffin Katz, Sentencing Consistency: Basic Principles Instead of Numerical Grids: The Ohio Plan (2002), 53 Case W.Res.L.Rev. 1, 12-13.
 {¶ 48} As this court has previously determined, because the mandate of consistency in sentencing is directed to the trial court, it is the trial court's responsibility to insure consistency among the sentences it imposes. See State v. Lyons,
Cuyahoga App. No. 80220, 2002-Ohio-3424, at ¶ 30; see, also,State v. Stern (2000), 137 Ohio App.3d 110. As we stated inLyons, "with the resources available to it, a trial court will, and indeed it must, make these sentencing decisions in compliance with this statute." Lyons, supra, at ¶ 33.
 {¶ 49} This mandate is set forth in R.C. 2929.11(B), which provides, in relevant part:
 {¶ 50} "A sentence imposed for a felony shall be reasonably calculated to achieve the two overriding purposes of felony sentencing set forth in division (A) of this section, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and
consistent with sentences imposed for similar crimes committed by similar offenders." (Emphasis added.)
 {¶ 51} Written in the conjunctive, the sentence imposed by the trial court must not only be reasonably calculated to achieve the overriding purposes of felony sentencing, inter alia, but it must also be "consistent with sentences imposed for similar crimes committed by similar offenders." Thus, it is not sufficient that a trial court merely comply with that part of R.C. 2929.11(B) that addresses the seriousness of the offender's conduct. Compliance with one part of the statute's directive does not obviate the need to comply with the balance of this statutory provision.
 {¶ 52} Notwithstanding the statute's requirements, we recognize that trial courts are limited in their ability to address the consistency mandate and appellate courts are hampered in their review of this issue by the lack of a reliable body of data upon which they can rely. Despite the directive set forth in R.C. 2929.11(B) for a trial court to impose felony sentences that are "consistent with sentences imposed for similar crimes by similar offenders," the legislature has yet to identify the means by which the courts should attain this goal. Neither individual practitioners, government attorneys, trial courts or appellate courts have the resources available to assemble reliable information about sentencing practices throughout the state. SeeState v. Haamid, Cuyahoga App. Nos. 80161 and 80248, 2002-Ohio-3243 (Karpinski, J., concurring). Identification of the data and factors that should be compared in deciding whether a criminal offense is "similar" in itself would be a massive undertaking, yet critical to begin to build a database. "Until that data is available and accessible, appellate courts will be able to address the principle of consistency only to a very limited degree." Id., at ¶ 34.
 {¶ 53} Although in the past some members of this court, the majority author included, have found that the failure of a trial court to engage in any consistency analysis required a remand for resentencing, this author has since been persuaded by recent arguments to find otherwise when a criminal defendant has failed to present any argument, however minimal, regarding sentences imposed for similar offenders. See State v. Armstrong, Cuyahoga App. No. 81928, 2003-Ohio-5932 (McMonagle, J., concurring); see, also, State v. Mayes, Cuyahoga App. No. 82592, 2004-Ohio-2014 (McMonagle, J., concurring). "Although a defendant cannot be expected to produce his or her own database to demonstrate the alleged inconsistency, the issue must at least be raised in the trial court and some evidence, however minimal, must be presented to the trial court to provide a starting point for analysis and to preserve the issue for appeal." Id. at ¶ 29; cf. State v.Douse, Cuyahoga App. No. 82008, 2003-Ohio-5238 (McMonagle, J., concurring in part and dissenting in part); State v. Crayton,
Cuyahoga App. No. 81257, 2003-Ohio-4663 (McMonagle, J., concurring in part and dissenting in part).
 {¶ 54} As in Armstrong, appellant did not submit any evidence of sentences imposed upon similar offenders. Reiterating, we are mindful of the burden placed not only upon trial courts but upon counsel in arguing and defending arguments regarding consistency. Nonetheless, until some framework is in place from which an appellate court can meaningfully review these sentences in compliance with the sentencing statute's mandates, it is not unreasonable for a criminal defendant to at least submit some evidence, however minimal, for the trial court to consider — at least until such a time that a better system is in place that tracks consistency in sentencing.
 {¶ 55} As such, appellant's fourth assignment of error is not well taken and is overruled. We note parenthetically that the transcript of the sentencing hearing differs from that of the journal entry. The journal entry orders the gross sexual imposition convictions and the life sentence to be served concurrently but consecutive to the three years on the kidnapping conviction. The journal entry states:
 {¶ 56} "The court imposes a prison term at Lorain Correctional Institution of life as to Count 1 [rape]; 2 years as to each of Counts 2 thru 9 [gross sexual imposition], counts to run concurrent with each other; and 3 years as to Count 10 [kidnapping]; Count 10 to run consecutive to Counts 1 thru 9."
 {¶ 57} The transcript of the sentencing hearing, however, provides:
 {¶ 58} "* * * Pursuant to Ohio Revised Code, on count one, [appellant] is sentenced to life in prison at the Lorain Correctional Facility.
 {¶ 59} "On counts two, three, four, five, six, seven, eight, nine, two years on each count. Those terms will be concurrent to one another, and consecutive to count one.
 {¶ 60} "On count ten, [appellant] is sentenced to a three-year term at the Lorain Correctional Facility. That term will run consecutive to all other sentences." (Emphasis added.)
 {¶ 61} As can be surmised from this excerpt, the trial court meant to impose an additional five years to be served consecutive to the mandatory life sentence, not three, as the journal entry states and appellant argues. Nonetheless, a court speaks through its journal, not its oral pronouncements. Gaskins v. Shiplevy
(1996), 76 Ohio St.3d 380, 382.
 Sufficiency of the Evidence {¶ 62} In his third pro se assignment of error, appellant contends that his conviction is not supported by sufficient evidence. Succinctly, it appears that appellant argues that there was no credible evidence sufficient to support his convictions. An appellate court's function in reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. A verdict will not be disturbed on appeal unless reasonable minds could not reach the conclusion reached by the trier of fact. State v. Jenks (1991),61 Ohio St.3d 259, 273. In essence, sufficiency is a test of adequacy.State v. Thompkins (1997), 78 Ohio St.3d 380, 386-387.
 {¶ 63} Appellant misunderstands the test for sufficiency. Although he correctly recites the applicable law as we have above, it bears repeating. The test is not whether the state's evidence is to be believed, but if believed, would that evidence support a conviction.
 Rape {¶ 64} Rape is governed by R.C. 2907.02. Subsection A(1) of this statute provides, in relevant part, that "[n]o person shall engage in sexual conduct with another who is not the spouse of the offender * * * when * * * [t]he other person is less than thirteen years of age * * *." Subsection (A)(2) provides that "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." "Sexual conduct" is defined, in part, as "* * * cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body * * * into the vaginal * * * cavity of another." R.C.2907.01(A).
 {¶ 65} The victim testified that appellant licked her vagina and stuck his tongue inside it — acts that satisfy the definition of sexual conduct. The victim identified appellant as the perpetrator and it was undisputed that the victim was less than 13 years old at the time of the offense. This testimony alone, if believed, was sufficient to support a conviction for rape.
 Gross Sexual Imposition {¶ 66} Gross sexual imposition is governed by R.C. 2907.05
and provides, in relevant part, that "[n]o person shall have sexual contact with another, not the spouse of the offender * * * when * * * [t]he offender purposely compels the other person to submit by force or threat of force * * * [or] [t]he other person * * * is less than thirteen years of age * * *." "Sexual contact" means any touching of an erogenous zone of another, including without limitation the * * * pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).
 {¶ 67} The victim testified that appellant licked her breasts and put his mouth on her vagina — acts that satisfy the definition of "sexual contact." As stated above, the victim identified appellant as the perpetrator and it was undisputed that the victim was less than 13 years old at the time of the offense. This testimony alone, if believed, was sufficient to support a conviction for gross sexual imposition.
 Kidnapping {¶ 68} Kidnapping is governed by R.C. 2905.01 and provides, in relevant part, that "[n]o person * * * in the case of a victim under the age of thirteen * * *, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, * * * to engage in sexual activity * * *." R.C. 2907.01 defines "sexual activity" as sexual conduct or sexual contact, or both," which have been previously defined above.
 {¶ 69} The victim testified that appellant would enter her bedroom and take her clothes off. He would not let her get away and would block her escape if she tried to leave the room. These acts are consistent with restraining the victim's liberty. As discussed above, appellant thereafter engaged in acts that would constitute not only sexual contact, but sexual conduct as well. Consequently, this evidence alone, if believed, was sufficient to support a conviction for kidnapping.
 {¶ 70} Combining the victim's testimony with that of Ms. Woods, it cannot be said that there was insufficient evidence to support appellant's convictions for rape, gross sexual imposition and kidnapping. Moreover, the forensic scientists' testimony regarding the presence of saliva, and the inability to exclude appellant as the source of that saliva, if believed, also supports appellant's convictions for rape and gross sexual imposition.
 {¶ 71} Appellant's third pro se assignment of error is not well taken and is overruled.
 Manifest Weight of the Evidence {¶ 72} Appellant's fourth pro se assignment of error challenges his convictions as being against the weight of the evidence. Specifically, appellant challenges the reliability of the DNA evidence admitted at trial.
 {¶ 73} In contrast to a sufficiency-of-the-evidence argument, an argument based on manifest weight of the evidence requires an appellate court to determine whether the state appropriately carried its burden of persuasion. A court reviewing a question of weight is not required to view the evidence in a light most favorable to the prosecution, but may consider and weigh all of the evidence produced at trial. A manifest-weight-of-the-evidence argument involves determining whether there exists a greater amount of credible evidence to support one side of an issue rather than the other. State v. Thompkins,78 Ohio St.3d at 387. It is not a question of mathematics, but depends on its effect in inducing belief. Id. A reviewing court weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the factfinder clearly lost his or her way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Martin (1983),20 Ohio App.3d 172, 175.
 {¶ 74} We see no manifest miscarriage of justice. Ohio has long recognized the admissibility of DNA evidence. See State v.Pierce, 64 Ohio St.3d 490. The Pierce court stated:
 {¶ 75} "We hold that questions regarding the reliability of DNA evidence in a given case go to the weight of the evidence rather than its admissibility. No pretrial evidentiary hearing is necessary to determine the reliability of the DNA evidence. The trier of fact, the judge or jury, can determine whether DNA evidence is reliable based on the expert testimony and other evidence presented. `We emphasize, however, that once the court determines admissibility, the jury remains at liberty to reject [the scientific] evidence for any number of reasons, including a view that the * * * [scientific] technique itself is either unreliable or misleading.' * * * `With adequate cautionary instructions from the trial judge, vigorous cross-examination of the government's experts, and challenging testimony from defense experts, the jury should be allowed to make its own factual determination as to whether the evidence is reliable.'" Id. at 501. (Citations omitted.)
 {¶ 76} Appellant did not question the reliability of the DNA evidence at trial or otherwise demonstrate its unreliability to this court. Moreover, we note that the state did not rely exclusively on the DNA evidence to prove its case. On the contrary, the victim and Ms. Woods both testified extensively and consistently.
 {¶ 77} As previously stated, the victim testified that appellant disrobed her, stared at her naked body, touched and licked her breasts, put his mouth on her vagina, licked it and then inserted his tongue. The victim was not allowed to leave and was threatened with harm if she did not comply. The victim identified appellant as the perpetrator of these offenses and it was undisputed that she was under 13 years of age when these offenses took place. Ms. Woods testified regarding statements made to her by appellant indicating that he engaged in these sexual acts with the victim. Even in the absence of the forensic evidence, there was credible evidence before the jury to convict appellant of rape, gross sexual imposition and kidnapping.
 {¶ 78} Appellant contends that the victim's testimony was less than credible because she could not specifically give the dates that these events took place or how many times they occurred. Specifically, the victim testified that appellant would come to her bedroom "every night, every other night."
 {¶ 79} It cannot be said that this testimony minimizes the victim's credibility. She testified repeatedly and consistently as to what appellant did to her over a period of time. That she could not recall with specificity when the offenses occurred or at what interval does not detract from her testimony that it occurred "a lot." We find that the factfinder did not lose its way in resolving this evidence and there was, consequently, no manifest miscarriage of justice.
 {¶ 80} Appellant's fourth pro se assignment of error is not well taken and is overruled.
 {¶ 81} The judgment is affirmed.
Judgment affirmed.
Blackmon, P.J., concurs.
 Dyke, J., concurs in judgment only.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.